UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KENNETH MICHAEL STUTTS, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:04-CV-755 CAS |
| v. | ) |
| | ) |
| JOHN E. POTTER, Postmaster General, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment. Plaintiff has opposed the motion and the matter is fully briefed. The Court will grant the motion for the reasons set forth below.

### I. BACKGROUND

In his pro se complaint, Kenneth Michael Stutts, a postal worker, asserts the United States Postal Service ("Postal Service") failed to comply with a Merit System Protection Board ("MSPB") class action order concerning a Postal Service Reduction in Force ("RIF") action retroactive to the Postal Service restructuring of 1992-1993. Stutts asserts the Postal Service, specifically Neal Holliday, Information Systems Service Center ("IBSCC") manager; Elizabeth Nash, Management Support Service Center ("MSSC") manager; William Kaller, database manager; and Candace Walters, HQ PCES manager, failed to place him in his "best offer" position of data base specialist. Stutts claims that a result he was "blackballed" and denied advancement opportunities in the database field. Specifically, Stutts asserts that on April 9, 1999, he received a letter from Nash assigning him the title of Local Area Network ("LAN") Administrator EAS-21 with the St. Louis MSCC, followed by official action personnel action, retroactive to March 13, 1999, officially

removing him from his RIF assigned job title of Database Specialist with the St. Louis based MSSC.

On June 14, 1999, Stutts filed an EEO complaint asserting he was discriminated on the basis of sex and in retaliation for engaging in prior EEO activity in his selection for reassignment as a LAN Administrator. Stutts was represented by counsel. Stutts withdrew his request for a hearing and sought a final decision from the Postal Service. The Postal Service issued a final decision, finding that Stutts had failed to prove discrimination based on sex or reprisal with respect to the April 9, 1999 reassignment. Stutts appealed to the EEOC's office of Federal Operations. The Commission affirmed.

## II. DISCUSSION

### A. Exhaustion of administrative remedies

Under Title VII, plaintiffs must follow administrative procedures and exhaust administrative remedies by timely filing a charge of discrimination with the EEOC before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1); see E.E.O.C. v. Commercial Office Prods. Co., 486 U.S. 107, 110-12 (1988); Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Shannon, 72 F.3d at 684 (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)). If a plaintiff were allowed to bring a claim outside the scope of the EEOC charge, it would "circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge . . . ." Williams, 21 F.3d at 223 (quoting Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985)).

2

The scope of any subsequent federal court action is defined by claims encompassed within the prior EEO claim, and like or related matters that might be reasonably expected to be subject to the ensuing EEOC investigation growing out of the claims. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222-23 (8th Cir. 1994). Failure to pursue the administrative remedies to the extent required by the statute operates as a bar to judicial relief. Miller v. Runyon, 32 F.3d 386 (8th Cir. 1994); see Briley v. Carlin, 172 F.3d 567, 572-73 (8th Cir. 1999) (affirming grant of summary judgment based on failure to exhaust administrative remedies, as failure to promote claim was not related to plaintiff's EEO complaint concerning reduced duties).

Courts recognize claims as exhausted when they have been actually filed before the EEOC or when they are "like or reasonably related to the allegations of the [administrative] charge." Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1986). The Eighth Circuit has held that claims are deemed to be like or reasonably related when they "could reasonably be expected to grow out of the charge of discrimination." Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (quoting Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985)).

In this case, Stutts and the EEOC investigated only plaintiff's claim that he was discriminated against on the basis of sex and in retaliation for engaging in prior EEO activity in his selection for reassignment as a LAN Administrator in April 1999. Stutts did not raise the MSPB claims he now attempts to assert, i.e., the Postal Service's purported non compliance with a 1995 MSPB order and retaliation based on his prior MSPB activity. The EEOC investigation into Stutts' claim that he was issued a lateral reassignment on April 9, 1999 would not have reasonably encompassed additional claims such as his assertions of a denial of training and denial of a promotion. Accordingly, to the

3

extent Stutts is attempting to raise additional claims, the Court holds that Stutts has failed to exhaust his administrative remedies with respect to the additional claims.

### B. Merit Systems Protection Board

A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address. 29 C.F.R. § 1614.302. The Board has only that limited jurisdiction granted to it by statute or authorized regulation. See Roche v. United States Postal Service, 742 F.2d 1424, 1426 (Fed.Cir.1984). Title 5 U.S.C. § 7512 provides that a lateral reassignment is not an adverse action within the MSPB's jurisdiction if it does not result in a loss of grade or pay. As the MSPB has no jurisdiction over a lateral reassignment such as Stutts,' it therefore follows that his EEO complaint did not involve "an action which the employee or applicant may appeal to the MSPB, and therefore was not a "mixed case" pursuant to 5 U.S.C. § 7702. Accordingly, Stutts failed to exhaust his administrative remedies with respect to his MSPB claims.

Stutts also argues that he properly raised in his "mixed case" complaint a claim of retaliation for prior MSPB activity pursuant to the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(9). The MSPB has no jurisdiction over alleged whistleblower violations asserted by Postal Service employees since the Postal Service is not an "agency" within the meaning of 5 U.S.C. § 2302(a)(2)(C),[1] See Van Werry, Jr., v. MSPB., 995 F.2d 1048, 1052 (Fed. Cir. 1993) (According

---

[1]FN* 5 U.S.C. § 2302(a)(2)(C), reads:

"agency" means an Executive agency and the Government Printing Office, but does not include--

4

to section 2302, a "personnel action" may be considered a "prohibited personnel practice" only if it occurs within an "agency" as that word is defined; definition of "agency" in section 2302(a)(2)(C) does not include the United States Postal Service, which is specifically excluded from the generally applicable definition of "executive agency" in 5 U.S.C. § 105 (1988), by virtue of its exclusion from the definition of "independent establishment" in 5 U.S.C. § 104 (1988)). Instead, Postal Service employees may only raise whistleblowing as a defense in an otherwise appealable MSPB action. Booker v. MSPB, 982 F.2d 517, 519 (Fed. Cir. 1992) (Postal Service employee who had been restored to duty after partial recovery from compensable injury could not appeal circumstances of her restoration to MSPB, despite her claim that she had been victim of reprisals for having complained about delays in completion of her compensation claims and was discriminated against by Postal Service's injury compensation specialist). Plaintiff's lateral reassignment is not an otherwise appealable action, for the reasons set forth before. Also, plaintiff's prior MSPB appeal did not include claims of discrimination, therefore his appeal was not "protected activity" under Title VII and cannot form the basis of a retaliation charge pursuant to that statute. Comstock v. Consumers Markets, inc., 953 F.Supp. 1096 (W.D. MO. 1996), citing Wiehoff v. GTE Directories Corp., 61 F.3d 588, 598 (8th Cir. 1995). Therefore, the Court concludes that to the extent plaintiff

---

(i) a Government corporation;

(ii) the Federal Bureau of Investigation, the Central Intelligence Agency, the Defense Intelligence Agency, the National Security Agency, and, as determined by the President, any Executive agency or unit thereof the principle function of which is the conduct of foreign intelligence or counterintelligence activities; or

(iii) the General Accounting Office.

5

raises claims of noncompliance with prior MSPB orders and retaliation for prior MSPB activity, those claims must be dismissed from this lawsuit.

## C. Postal Service's motion for summary judgment

In support of its motion for summary judgment, the Postal Service argues (1) Stutts' reassignment does not constitute a materially adverse employment action; (2) Stutts fails to demonstrate he was treated differently than any similarly situated female employees; (3) Stutts fails to demonstrate any causal connection between his reassignment and his prior EEO activity; and (4) Stutts failed to demonstrate pretext. Plaintiff opposes the motion.[2]

In support. the parties submitted, *inter alia*, plaintiff's deposition and affidavit; correspondence; affidavits of Elizabeth Nash, Manager of the MSSC and Neal Holliday, Manager of IBSSC; Stutts' MSPB decisions; job/position descriptions; Stutts' EEO Information for Precomplaint Counseling, Stutts' Complaint of Discrimination, and the Postal Service decisions. The evidence reveals the following.

Plaintiff works for the Postal Service as a LAN Administrator, EAS-21, at the MSSC in St. Louis, Missouri. He was assigned to this position effective March 13, 1999. Prior to his reassignment, plaintiff was assigned the title Database Specialist, EAS-21, at the IBSSC in St. Louis. Plaintiff was titled a Database Specialist, EAS-21, by accepting a "best offer" position pursuant to a postal service Compliance RIF Notice issued in 1995. Although titled Database Specialist, plaintiff testified that had been performing the functional work of a LAN Administrator on an ad hoc basis for approximately ten years before the formal reassignment. Plaintiff also testified that he received off-site LAN training on three occasions when he was titled a Database Specialist.

---

[2]After filing his pro se complaint, Plaintiff retained counsel who filed a response to defendant's motion on his behalf. Counsel did not file an Amended Complaint on Stutts' behalf.

7

Elizabeth Nash, Manager of the MSSC, attested that Stutts was performing LAN Administrator work with a title of Database Specialist. Since the title Database Specialist was not reflective of the work performed in the LAN operation, she submitted a request to change the title from Database Specialist to LAN Administrator. She forwarded the request to her manager, Candace Walter, at headquarters and it was approved. Nash further attested that Stutts, along with a number of others, were transferred during this merger from the IBSSC to the MSSC by Neal Holliday.

Neal Holliday, Manager of IBSSC, attested that he was not involved in the decision to reassign Stutts from the position of Database Specialist to LAN Administrator on April 9, 1999. He was however, involved in the decision to reassign Stutts from the IBSSC to the MSSC. The reassignment was a management decision to centralize infrastructure support within the IBSSC into the MSSC to improve operational efficiency by having this support function performed in a central location. The consolidation effort had began several years earlier in an ad hoc structure. (Ex. E.)

Ronald Waxman, another male employee, was reassigned along with plaintiff in 1999 as a LAN Administrator, EAS-21. (Ex. E.) Waxman was a Quality Assurance Specialist, EAS-21 at the IBSSC before his reassignment. (Exs. D, E) Prior to their reassignments, both were assigned to the IBSSC. Stutts reported to William Kaller. Waxman reported to Gary Rocca. (Ex. E, G.) After their reassignment to the MSSC, Stutts and Waxman reported to Elizabeth Nash and Carolyn Creswell. Stutts experienced no geographical move in connection with the reassignment, remaining in the same building. (Exs. D, G.) Stutts did not sustain any loss of pay or benefits as a result of the reassignment. (Ex. G.)

Two female employees, Jackie Hackett and Diane Rother, were not reassigned as LAN Administrators. Both Hackett and Rother were Database Specialists, EAS-21 prior to plaintiff's

8

reassignment. Hackett and Rother performed Database Specialist duties instead of LAN infrastructure duties both before and after Stutts' reassignment. Hacket and Rother were never assigned and never performed LAN duties. Also, prior to Stutts' reassignment, Hackett and Rother reported to Richard Grellner, a different supervisor than the supervisor to whom Stutts reported.

Elizabeth Nash, the manager who reassigned plaintiff in March 1999, attested that she first became aware of plaintiff's prior EEO activity in or around March 2000 when her manager asked that she attend an EEO mediation with regard to plaintiff's prior complaint. Nash attested that her knowledge in 2000 of Stutts' prior EEO activity had no bearing on her decision to reassign him to the position of LAN coordinator in 1999. (Ex. D.) In a subsequent affidavit, Nash attested that she was not the decision maker regarding Stutts' 1999 reassignment, but that Neal Holliday was. She stated that when she signed the reassignment letter in April 1999, she was aware that Stutts had filed an EEO complaint. (Attach. 3.)[3]

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).

---

[3]Contradictory affidavits can preclude summary judgment only if the prior testimony reflects confusion on the part of the witness and the subsequent affidavit explains why the earlier testimony is in conflict with the affidavit. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) (citing Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8th Cir. 1983)).

9

Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. The claims are evaluated under the familiar three-part analytical framework initially set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973), and later refined in subsequent Supreme Court decisions, most recently St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). See Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000).

10

"Once the plaintiff has established a prima facie case, the employer has the burden of explaining its actions with legitimate, nondiscriminatory reasons. If the employer puts forth legitimate reasons for its actions, the burden shifts back to the plaintiff to show that the employer's stated reasons were a pretext for discrimination." Whitley, 221 F.3d at 1055 (internal citations omitted). "The burden-shifting mechanism reflects in part the expediency of having an employer explain an adverse employment action. Accordingly, a prima facie case requires only a minimal showing before shifting the burden to the employer. An employee's attempt to prove pretext or actual discrimination requires more substantial evidence, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification. A court may therefore conclude that in light of the employer's non-discriminatory rationale, the plaintiff's evidence does not permit a reasonable inference of discrimination." Sprenger v. Federal Home Loan Bank of Des Moines, 253 F.3d 1106, 1111 (8th Cir. 2001) (internal citations omitted).

**Disparate Treatment and Retaliation Claims**

In a disparate treatment claim, a plaintiff must "demonstrate that he (1) is a member of a protected class; (2) was qualified to perform his job; (3) suffered an adverse employment action; and (4) was treated differently from similarly situated females. Schoffstall v. Henderson, 223 F.3d 818, 825 (8th Cir. 2000). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, McDonnell Douglas, 411 U.S. at 802, and then back to plaintiff to show that the defendant's reason was pretextual. Id. at 804." Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624 (8th Cir. 2005).

11

The McDonnell Douglas analysis also applies to claims of retaliation. Id.. "A prima facie case of retaliation is established when the plaintiff supplies sufficient proof he engaged in protected activity, was subjected to an adverse employment action, and a causal connection existed between the two. Curd v. Hank's Discount Fine Furniture, Inc., 272 F.3d 1039, 1041 (8th Cir. 2001). The defendant may then rebut the plaintiff's case by advancing a legitimate, non-retaliatory reason for the adverse employment action. Rheineck v. Hutchinson Tech., Inc., 261 F.3d 751, 757 (8th Cir. 2001). If the defendant makes this showing, the plaintiff must demonstrate the defendant's proffered reason was a pretext for illegal discrimination. Id." "The core question in a retaliation case does not, ultimately, concern the veracity of the facts underlying an employer's legitimate non-discriminatory reason for discharging its employee, but rather concerns whether the employment decision was based upon intentional discrimination." Stuart v. General Motors Corp., 217 F.3d 621, 637 (8th Cir. 2000) (internal quotation and citation omitted).

The Postal Service first argues plaintiff's reassignment is not an adverse employment action within the meaning of Title VII. They note Stutts experienced no geographical move in connection with the reassignment, remaining in the same building, nor did he sustain any loss of pay or benefits as a result of the reassignment. (Ex. G.) Plaintiff counters that he suffered a reduction in opportunity.

This Court finds it unnecessary to determine whether Stutts' lateral reassignment would constitute an adverse employment action. Assuming, *arguendo*, that Stutts could establish a prima facie case for his disparate treatment and retaliation claims, the Postal service has provided a legitimate nondiscriminatory reason for its action. After reviewing the record material, the Court concludes Stutts has not provided any evidence demonstrating that this evidence was pretextual.

12

Unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification. A court may therefore conclude that in light of the employer's non-discriminatory rationale, the plaintiff's evidence does not permit a reasonable inference of discrimination." Sprenger v. Federal Home Loan Bank of Des Moines, 253 F.3d 1106, 1111 (8th Cir. 2001) (internal citations omitted). Here the Postal Service provided evidence about why Stutts was assigned to LAN duties and why his title was changed through his 1999 reassignment in order to reflect those duties. Stutts began performing LAN responsibilities on an ad hoc basis because the Postal Service transferred the infrastructure function of LAN that plaintiff had been performing within the IBSSC to the MSSC in order to improve operational efficiency by having that operation performed in a central location. Nash requested Stutts' reassignment or title change to LAN Administrator because his Database Specialist title did not reflect the work that he was performing and had been performing in the LAN operation. Plaintiff testified that he performed LAN duties for years before his reassignment and that he never performed database work after he was titled Database Specialist in 1995.

Plaintiff argues he has provided sufficient evidence of pretext to support a jury verdict on plaintiff's claims. Plaintiff notes that Holliday was integrally involved in plaintiff's removal from his original position in the 1992-93 restructuring; that he was integrally involved in assigning plaintiff's duties upon his return to an EAS-21 position in July 1995 after the Compliance RIF; and that he was integrally involved in the 1999 restructuring. Plaintiff argues Holliday was the real decision maker in plaintiff's reassignment in April 1999, but Holliday and the Postal Service have attempted to cover up his involvement in the reassignment by seeking to shift responsibility to Nash. Stutts notes that the agency has contended that neither Nash or Holliday were aware of plaintif's

13

prior EEO activity, which is untrue. The above adds up to sufficient evidence of pretext to support a jury verdict on his claims of retaliation and sex discrimination.

Plaintiff also argues there is evidence of temporal proximity which permits an inference of causation here. He notes that he made his first request for a hearing before the EEOC in his first EEO case on October1, 1998, and that the Postal service acknowledged receipt of the request for a hearing in a letter dated April 16, 1999, one week after his reassignment. Stutts argues this would permit the inference that Postal Service officials had a heightened awareness of plaintiff's first EEO case in early April 1999.

"Generally, more than a temporal connection between the protected act and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.) (en banc), cert. denied, 528 U.S. 818 (1999). Nonetheless, Eighth Circuit cases both before and after Kiel have "sometimes held that the timing of one incident of adverse employment action following protected activity sufficed to establish causal connection." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832-33 (8th Cir. 2002) (collecting cases).

The Supreme Court has stated, "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima face case uniformly hold that the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted). The Eighth Circuit has generally refused to find evidence of causation where the adverse employment action follows the protected activity by six months or more. See, e.g., Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 685 (8th Cir. 2001) (seven-month time lapse

14

between protected activity and the alleged retaliatory act, without more, was "too long for the incidents to be temporally--and therefore causally--related"); Feltmann v. Sieben, 108 F.3d 970, 977 (8th Cir. 1997) (plaintiff fired six months after the protected activity; without more, temporal proximity was insufficient to show causal link), cert. denied, 523 U.S. 1041 (1998).

In light of the above authority, the Court concludes Stutts has offered no evidence that the real reason behind the reassignment was because of his sex or prior EEO activity or that otherwise undermines the legitimacy of the Postal Service's explanation. Because Stutts cannot show that there are genuine issues of material fact on the issue of whether the Postal Service's reason for its action was a pretext for discrimination, plaintiff cannot survive defendant's motion for summary judgment. Therefore the Court will grant the Postal Service's motion.

Accordingly,

**IT IS HEREBY ORDERED** that the United States Postal Service's motion to dismiss or for summary judgment is **GRANTED. (Doc. 12.)**

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 9th day of August, 2005.